SAVAGE, Appellant, vs. PRATT, Respondent.*

*January 13—February 7, 1956.*

* Motion for rehearing denied, with $25 costs, on April 3, 1956.

171

For the appellant there was a brief by *Winter & Winter* of Shawano, and oral argument by *Douglas D. Winter*.

For the respondent there was a brief and oral argument by *Ken Traeger* of Gresham.

BROADFOOT, J. The parties and the trial court agreed that the question of who had superior title to the juke box should be determined according to the provisions of sec. 122.09, Stats., which reads as follows:

"When goods are delivered under a conditional sales contract and the seller expressly or impliedly consents that the buyer may resell them prior to performance of the condition, the reservation of property shall be void against purchasers from the buyer for value in the ordinary course of business, and as to them the buyer shall be deemed the owner of the goods, even though the contract or a copy thereof shall be filed according to the provisions of this chapter."

Only one Wisconsin case is cited under annotations to this section of the statutes. That case is *Thorne v. State Bank*, 193 Wis. 97, 213 N. W. 646, and it involved the sale of a stock of general merchandise. There was express authority to sell from said stock at retail and that case is of little help in the determination of this case. The trial court instructed the jury that there was no express consent to a resale of the juke box and the question to be determined is whether the record will support a finding that the plaintiff impliedly consented to a resale. The rule is stated in 78 C. J. S., Sales, p. 297, sec. 574, as follows:

"If an implied consent of the seller to a resale is relied on to defeat his reservation of title, it must appear either that he had actual knowledge of the buyer's intent to resell or that he had knowledge of such facts as would bind him with constructive notice of such intent. The seller may assert his reserved title against a purchaser from the buyer in the absence of evidence that he knew or should have known that the buyer was a dealer in such property and bought to resell, and this is especially true where the contract provided that if there was a resale the purchase price should instantly fall due."

There are annotations on the subject in 47 A. L. R. 85, and 88 A. L. R. 109. Most of the cases deal with the sale of automobiles. There appear to be two lines of cases in which the title of the subvendee is held to be superior to that of the conditional seller. These are cases in which goods are sold to a retail dealer in the same kind of goods and where the conditional seller has knowledge of an intent to sell because the goods are ordered for delivery to a third person. In *McCombs v. Guild, Church & Co.* 77 Tenn. (9 Lea) 81, the conditional buyer of a piano offered it for sale in a sewing-machine store where he had other pianos and sold it without the knowledge of the conditional seller, and the court held those facts did not deprive the conditional seller of his property. The court added (p. 87):

"If the proof had shown that the purchaser was a regular dealer in pianos, that the plaintiffs knew the fact, and sold him the piano as such dealer, there might be strong ground for holding the plaintiffs to the consequences of such a transaction. But in the absence of such proof, the facts are not sufficient to sustain an affirmative answer to the question."

In *First Nat. Bank of Binghamton v. Hermann Co.* 275 App. Div. 415, 90 N. Y. Supp. (2d) 249, the subvendee's title was held good. In that case the conditional buyer was openly in the business of selling juke boxes as well as being

an operator. He had a showroom in his home. At the time he purchased the machine in question he told an officer of the company that he wanted the machine for resale. No objection was made and the buyer's testimony to that effect was undisputed. Also the company later made inquiries about territorial infringement in sales which indicated clearly that the conditional seller knew the goods were intended for resale.

The Tennessee case was decided prior to the adoption of the Uniform Conditional Sales Act. However, in great part the Uniform Conditional Sales Act such as we have in Wisconsin merely attempted to restate the law as it had been developed at common law. At common law, conditional sales contracts were effective to reserve title in the seller against the buyer and all other persons unless the seller estopped himself, even though the contract was not recorded and was not in writing.

With reference to sec. 122.09, Stats., both Uniform Laws Annotated and Williston on Sales cite *Oconto Land Co. v. Wallschlaeger,* 155 Wis. 418, 144 N. W. 979, to indicate that the statute was based on a rule that was already widely recognized. Sec. 122.09 is an exception to the general rule that a recorded conditional sales contract effectively reserves the title in the seller as against buyers from and creditors of the conditional buyer. The burden of proof is upon the subvendee to prove that the conditional buyer had authority, either express or implied, to resell the property.

There is no evidence in the record that the plaintiff had actual knowledge of any intent on the part of Auffrey to resell the juke box. Therefore, to defeat plaintiff's title the record must establish facts which would bind plaintiff with constructive notice of such intent.

There is evidence in the record that Auffrey had sold four used juke boxes. One was sold in May, 1952; another in October, 1952; the machine in question was sold as a used

machine in January, 1953; and another was sold in July, 1953. There is testimony that on a few occasions, the dates not being given, there were juke boxes in the front of the store building. One witness testified that at one time there was a juke box in the window that looked like a new one and the same had a sale tag on it. There is some testimony that, when slot machines were tolerated, operators placed other coin-operated devices on a percentage basis. There is some further evidence that thereafter the placement of new juke boxes on a percentage basis was not profitable to the operator.

This testimony falls far short of establishing that Auffrey was a dealer in juke boxes. There is no evidence that he ever sold a new juke box. He paid retail prices rather than wholesale prices. It is true that there can be dealers in second-hand goods. That is illustrated by many of the cases involving the sales of automobiles. However, dealers buy for resale at a profit and usually display their wares for sale at a fixed location. Auffrey bought used machines in 1950, and so far as the record shows, kept them upon his route upon a percentage basis. On the other hand, the contract itself provided that the juke box could not be sold until paid for. There is no evidence in the record that plaintiff had any knowledge, either actual or constructive, that Auffrey had any intent to sell the unit. Nothing in the record indicates that the plaintiff ever heard of the four sales of used machines until Auffrey had disappeared. Employees of Auffrey, who were in the store daily, testified they could not recall ever having seen a sale tag or "for sale" sign on a juke box, but that they were displayed on radios and television sets. Plaintiff testified that he was in Auffrey's store from eight to twelve times during 1952 and 1953 but there is no evidence that Auffrey had juke boxes for sale at any of the times plaintiff was there. Nor is there any evidence that plaintiff knew or should have known of any change in custom, if that

be of importance. We are concerned here with Auffrey's authority to resell, either express or implied.

The defendant has wholly failed to meet the burden of proof and the record will not support the finding that the plaintiff consented to the resale of the juke box by Auffrey to the defendant.

*By the Court.*—Judgment reversed. Cause remanded with instructions to enter judgment for the plaintiff in accordance with the prayer of his complaint.